UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                              )
GREATER BOSTON PLUMBING                       )
CONTRACTORS ASSOCIATION,                      )
                                              )
            Plaintiff,                        )          CIVIL ACTION NO.:
                                              )
v.                                            )
                                              )
COMMONWEALTH OF MASSACHUSETTS,                )
and THE MASSACHUSETTS DEPARTMENT              )
OF FAMILY AND MEDICAL LEAVE,                  )
                                              )
            Defendants.                       )
_____)

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

**INTRODUCTION**

Pursuant to 28 U.S.C. §§ 2201 and 2202, the Greater Boston Plumbing Contractors

Association ("PCA") seeks a declaration that Section 2(f) of the Massachusetts Paid Family and

Medical Leave Law ("PFML"), G. L. c. 175M, § 2(f), is preempted, in whole or in part, by the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., and

the National Labor Relations Act, as amended by the Labor Management Relations Act

("LMRA"), 29 U.S.C. § 186.  Section 2(f) of the PFML requires employers to provide for and

contribute to an employee's health insurance benefits while the employee is on an approved

leave of absence at the same level and under the same conditions as coverage would have been

provided had the employee continued working during the leave period.  The plumbing

contractors and businesses that the PCA represents have signed onto the collective bargaining

agreement between the PCA and the Plumbers and Gasfitters Local Union No. 12 (hereinafter

"Collective Bargaining Agreement"), and provide health insurance benefits to their employees

pursuant to the terms and conditions of an employee welfare benefit plan governed by ERISA and funded pursuant to the Collective Bargaining Agreement.

ERISA preempts Section 2(f) of the PFML because Section 2(f) "relates to" an employee benefit plan in that it requires the plan to adopt a specific choice or scheme of substantive coverage and provides an alternative mechanism for enforcing plan benefits to the one provided under ERISA. See Gobeille v. Liberty Mut. Ins. Co., 136 S. Ct. 936, 943 (2016); Zipperer v. Raytheon Co., 493 F.3d 50, 53–54 (1st Cir. 2007). ERISA also preempts Section 2(f) of the PFML to the extent that Section 2(f) imposes conflicting obligations upon the employee benefit plan, making compliance with both Section 2(f) and ERISA physically impossible. See Boggs v. Boggs, 520 U.S. 833, 844 (1997).

In addition, Section 2(f) of the PFML imposes conflicting obligations on the plumbing contractors and businesses that the PCA represents. The LMRA requires that all payments to a union benefit plan be made pursuant to a written agreement between labor and management. 29 U.S.C. § 186(a) and (c)(5). Here, the applicable collective bargaining agreement provides the basis for employer contributions to a union benefit plan in terms of hourly sums that correspond to the number of hours an employee actually works. Section 2(f) of the PFML, however, requires contributions to the plan on behalf of employees who are on leave and not actually working. Compliance with Section 2(f) of the PFML, therefore, would be inconsistent with the terms of the Collective Bargaining Agreement, and in violation of the LMRA, because there is no written basis for making contributions to the plan on behalf of employees who are not actually working. Furthermore, Section 2(f) of the PFML is preempted by the LMRA to the extent that it requires unionized employers to provide certain benefits to their unionized employees that were

2

not bargained for between the parties through the procedures established under the Collective Bargaining Agreement and federal law.

This Complaint further seeks injunctive relief prohibiting the Commonwealth of Massachusetts and its Department of Family and Medical Leave from enforcing Section 2(f) of the PFML against the PCA and the plumbing contractors and businesses it represents.

## **PARTIES**

1.      Plaintiff is the PCA, which is a Massachusetts trade association with offices currently located at 35 Braintree Hill Office Park in Braintree, Massachusetts.  The PCA represents the interests of approximately sixty unionized plumbing contractors and businesses in the Greater Boston Area who have signed onto the Collective Bargaining Agreement (hereinafter "Signatory Contractors").

2.      The PCA is a voluntary member organization whose mission is the advancement of the Plumbing Industry in the Greater Boston area.

3.      The Signatory Contractors are employers who employ Massachusetts employees.

4.      The Signatory Contractors are subject to the Massachusetts Paid Family and Medical Leave Law ("PFML").

5.      Defendant Commonwealth of Massachusetts is a sovereign state of the United States of America.

6.      Defendant Massachusetts Department of Family and Medical Leave (the "Department") is a state agency charged under the PFML with the responsibility for enforcing the PFML.  G. L. c. 175M, § 8(g).

## JURISDICTION AND VENUE

7.     This action is brought under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 -

2202, to obtain declaratory and injunctive relief.  An actual controversy within this Court's

subject-matter jurisdiction exists regarding whether ERISA and the LMRA preempt Section 2(f)

of the PFML.

8.     This Court has subject matter jurisdiction because the PCA seeks declaratory and

injunctive relief from state regulation on the ground that such regulation is preempted by federal

statutes, including ERISA and the LMRA, which by virtue of the Supremacy Clause of the

United States Constitution, must prevail and thus presents a federal question which this Court

has jurisdiction under 28 U.S.C. § 1331 to resolve.  Shaw v. Delta Air Lines, Inc., 463 U.S. 85,

96 n.14 (1983); see also Local Union No. 12004, United Steelworkers of Am. v. Massachusetts,

377 F.3d 64, 74–75 (1st Cir. 2004).

9.     The PCA has standing to pursue this action on behalf of the Signatory Contractors

because:  the Signatory Contractors employ Massachusetts employees and will suffer a direct

and adverse impact from the application of Section 2(f) of the PFML and thus would have

standing in their own right to bring this action; the interest that the PCA seeks to protect is

germane to the PCA's mission to advance the Plumbing Industry in the Greater Boston area; and

the relief sought – which is declaratory and injunctive – does not require the participation of

individual Signatory Contractors.  See Hunt v. Wash. St. Apple Advertising Comm'n, 432 U.S.

333, 343 (1977).

10.     Venue properly rests in this Court pursuant to 28 U.S.C. § 1391(b) and (c)

because a substantial part of the events giving rise to this controversy occurred in this District,

the parties reside in this District, and no real property is involved in this action.

## FACTS

### The Massachusetts Paid Family and Medical Leave Law

11.     The Commonwealth of Massachusetts enacted the PFML on June 28, 2018.

12.     Under the PFML, starting on October 1, 2019, the PCA's Signatory Contractors were required to implement certain payroll deductions and remit certain employee and/or employer contributions to the Department.  These funds are being held in a trust administered by the Department and used to pay for the benefits available under the PFML.

13.     Beginning on January 1, 2021, Massachusetts employees, including those who work for the Signatory Contractors, may apply to the Department for family leave or medical leave benefits.  See 458 C.M.R. 2.08.

14.     Once approved, employees may take up to twenty-six weeks of paid family and medical leave to care for a sick family member, to bond with a newborn or a child after adoption or foster care placement, to manage family affairs when a family member is on active duty in the armed forces, or to manage a personal serious injury or illness.  G. L. c. 175M, § 2.

15.     In addition to requiring paid leave under certain situations, the PFML also requires employers to provide for and contribute to their employee's health insurance benefits during the leave period.  Specifically, Section 2(f) provides as follows:

> The taking of family or medical leave shall not affect an employee's right to accrue vacation time, sick leave, bonuses, advancement, seniority, length-of-service credit or other employment benefits, plans or programs. During the duration of an employee's family or medical leave, the employer shall provide for and contribute to the employee's employment-related health insurance benefits, if any, at the level and under the conditions coverage would have been provided if the employee had continued working continuously for the duration of such leave.

16.     If an employer violates Section 2(f), an aggrieved employee may bring a civil action against the employer in the Massachusetts Superior Court, may seek common law

remedies in addition to legal and/or equitable relief, may recover treble damages and attorneys' fees, and shall be entitled to a jury trial.  G. L. c. 175M, § 9(d).

## The Local 12 Health and Welfare Plan

17.  The Signatory Contractors have signed the Collective Bargaining Agreement.

18.  Pursuant to the terms of the Collective Bargaining Agreement, the Signatory Contractors provide for and contribute to their employee's health insurance benefits, which are governed by the terms and conditions of the Local 12 Health and Welfare Plan (the "Plan").

19.  The Plan is an employee welfare benefit plan governed by ERISA.

20.  The Plan maintains a fund (hereinafter "Fund") from which insurance premiums are paid for the purpose of providing health insurance coverage to the covered participants under the Plan.

21.  The Fund is funded by contributions from contributing employers in accordance with the terms of the Collective Bargaining Agreement.

22.  The Signatory Contractors are contributing employers who provide contributions to the Fund in accordance with the terms of the Collective Bargaining Agreement.

23.  Article VII-B, Section A.1 of the Collective Bargaining Agreement provides that contributing employers "shall contribute an hourly sum on behalf of each Journeyman and Apprentice employed. . . " to the Plan.

24.  The hourly sum is an agreed hourly rate based on the actual number of hours worked by the employee.

25.  Under Article VII-B, Section D.1, the Signatory Contractors must make their contributions by the 15th of the month following "the month in which the hours were worked."

26.     Article VII-B, Section D.2 of the Collective Bargaining Agreement provides that, along with their Funds contributions, Signatory Contractors "must file each month a contributions and deductions report that itemizes the names of each Journeyman/Apprentice employed, the hours of *actual* work for the reported month for each Journeyman/Apprentice *that corresponds to amount of contributions and deductions forwarded to the Funds Office*" (emphasis added).

27.     Under the Collective Bargaining Agreement, employers provide for and contribute to an employee's health benefits based on the number of hours the employee actually works.  Employers do not provide for or contribute to an employee's health benefits when the employee is not actually working.

28.     The Plan provides health insurance coverage to an eligible employee for a six-month period, provided that the employee worked the requisite number of hours (for which employer contributions were made) during the preceding six-month period.

29.     Specifically, the Plan provides that an employee will be eligible for health insurance coverage through each six-month coverage period, if the employee's credited hours for the preceding six-month eligibility period (period when actual hours were worked) total 600 or more.

30.     Under the Plan, if an employee works more than 600 hours during an eligibility period, the employee may bank the surplus hours in an Hours Bank and use the banked hours during future eligibility periods as necessary to maintain eligibility for health insurance coverage.

31.     Under the Plan, employees do not receive credited hours when they are not actually working.

7

32.     The requirements of Section 2(f) of the PFML are at odds with the terms and

conditions of the Plan and the Collective Bargaining Agreement.  Section 2(f) requires

employers to provide for and contribute to an employee's health insurance benefits while the

employee is not working, while the Plan and Collective Bargaining Agreement describe a

different arrangement for providing for and funding health insurance coverage that does not

require employer contributions when an employee is not working.

33.     Compliance with Section 2(f) of the PFML is not only inconsistent with the terms

of the Plan and the Collective Bargaining Agreement, but also it would violate the LMRA.  The

LMRA prohibits employers from making contributions to the Plan without a written basis for

doing so. 29 U.S.C. § 186(a) and (c).  Here, there is no written basis for making contributions to

the plan on behalf of employees who are not actually working.  Accordingly, the LMRA

preempts Section 2(f) of the PFML as applied to the PCA and its Signatory Contractors.

34.     Furthermore, Section 2(f) of the PFML is preempted by the LMRA to the extent

that it requires the Signatory Contractors to provide certain benefits to their unionized employees

that were not bargained for between the parties through the procedures established under the

collective bargaining agreement and federal law.

35.     Starting on January 1, 2021, the PCA and its Signatory Contractors face

impending injury in the form of an enforcement action by Defendants, criminal and other

penalties, and/or civil liability as a result of their inability to comply with both state and federal

law.

36.     Accordingly, an actual controversy has arisen because Section 2(f) of the PFML

attempts to dictate the terms of an ERISA benefit plan and provides alternative mechanisms for

enforcing plan benefits in violation of ERISA.

37.     In addition, an actual controversy has arisen because the PCA and its Signatory

Contractors cannot comply with both state and federal law.

38.     A declaration that ERISA and the LMRA preempt Section 2(f) of the PFML

would clarify the parties' legal obligations and allow them to make responsible decisions about

their compliance with the law.

**COUNT I**
**For Declaratory and Injunctive Relief Based on ERISA Preemption**

39.     The PCA realleges and incorporates herein by reference the preceding paragraphs

of this Complaint.

40.     ERISA expressly provides that it "shall supersede any and all State laws insofar

as they may now or hereafter relate to any employee benefit plan . . . ."  29 U.S.C. § 1144(a).

41.     A state law "relates to" an employee benefit plan if it has a connection with or

refers to an ERISA-regulated benefit plan, "even if the law is not specifically designed to affect

such plans, or the effect is only indirect and even if the law is consistent with ERISA's

substantive requirements." See District of Columbia v. Greater Washington Bd. of Trade, 506

U.S. 125, 129-30 (1992); see also Rosario–Cordero v. Crowley Towing & Transp. Co., 46 F.3d

120, 123 (1st Cir.1995).

42.     "To be more precise, '[w]here a State's law acts immediately and exclusively

upon ERISA plans ... or where the existence of ERISA plans is essential to the law's operation ...,

that 'reference' will result in pre-emption.'" Gobeille v. Liberty Mut. Ins. Co., 136 S. Ct. 936,

943 (2016) (quotation omitted).

43.     ERISA's preemption is very broad, and state laws that govern a central matter of

ERISA plan administration, interfere with a nationally uniform plan administration, directly or

indirectly force an ERISA plan to adopt a certain choice or scheme of substantive coverage, or

9

provide an alternative enforcement mechanism to ERISA's own enforcement scheme will be preempted.  See Gobeille v. Liberty Mut. Ins. Co., 136 S. Ct. 936, 943 (2016); Zipperer v. Raytheon Co., 493 F.3d 50, 53–54 (1st Cir. 2007).

44.     Section 2(f) of the PFML requires the Signatory Contractors to provide for and contribute to their employees' health insurance benefits during the duration of their paid family or medical leave at the level and under the conditions coverage would have been provided if the employee had continued working continuously for the duration of such leave.

45.     Section 2(f) of the PFML in effect requires the Signatory Contractors to provide health insurance benefits inconsistent with the benefit arrangement and terms as described in the Plan and Collective Bargaining Agreement.

46.     Section 2(f) of the PFML in effect mandates that the Signatory Contractors amend the Plan to allow an employee, who is on leave and not working, to receive credit for hours the employee did not actually work so as to become eligible for health insurance coverage.

47.     Accordingly, Section  2(f) of the PFML impermissibly "relates to" an ERISA employee benefit Plan because it effectively forces the Plan to adopt a certain scheme of substantive coverage and is therefore preempted.  Gobeille, 136 S. Ct. at 943; see also Sherfel v. Newson, 768 F.3d 561, 566-68 (6th Cir. 2014); Retail Industry Leaders Ass'n v. Fielder, 475 F.3d 180, 193-94 (4th Cir. 2007).

48.     ERISA also requires a plan to "specify the basis on which payments are made to and from the plan" and requires that the plan fiduciary administer the plan "in accordance with the documents and instruments governing the plan."  29 U.S.C. §1102(b)(4) and §1104(a)(1)(D); Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 147 (2001).

49.     Section 2(f) of the PFML, however, requires the Plan to pay benefits contrary to the terms of the Plan, rather than "in accordance" with them.  Section 2(f) therefore imposes conflicting obligations upon the Plan and is preempted to that extent as well.  <u>Boggs</u>, 520 U.S. at 844; <u>Sherfel</u>, 768 F.3d at 568.

50.     The PFML also provides alternative enforcement mechanisms for enforcing the provision of health insurance benefits in addition to the exclusive enforcement mechanisms provided under ERISA.

51.     Section 9(d) of the PFML provides in pertinent part as follows:

> An employee or former employee aggrieved by a violation of . . . subsection . . . (f) of section 2 of this chapter may, not more than 3 years after the violation occurs, institute a civil action in the superior court. A party to the action shall be entitled to a jury trial. All remedies available in common law tort actions shall be available to prevailing plaintiffs and shall be in addition to any legal or equitable relief provided in this section. The court may: (i) issue temporary restraining orders or preliminary or permanent injunctions to restrain continued violations of this section; (ii) reinstate the employee to the same position held before the violation or to an equivalent position; (iii) reinstate full fringe benefits and seniority rights to the employee; (iv) compensate the employee for 3 times the lost wages, benefits and other remuneration and the interest thereon; and (v) order payment by the employer of reasonable costs and attorneys' fees.

G. L. c. 175M, § 9(d).

52.      The enforcement mechanisms under Section 9(d) of the PFML are inconsistent with, and alternative to, the enforcement mechanism provided under ERISA, 29 U.S.C. § 1132.

53.     In sum, Section 2(f) of the PFML impermissibly forces the Plan to adopt a certain choice or scheme of benefits, imposes conflicting obligations on the Plan, and impermissibly provides alternative enforcement mechanisms for enforcing ERISA-plan benefits.  Accordingly, Section 2(f) of the PFML is preempted by ERISA insofar as it applies to the PCA's Signatory Contractors.

**COUNT II**
**For Declaratory and Injunctive Relief Based on Preemption under the LMRA**

54.     Plaintiff realleges and incorporates herein by reference the preceding paragraphs of this Complaint.

55.     Under the Supremacy Clause of the United States Constitution, federal law may preempt a state law to the extent that the state law conflicts with the federal law.

56.     An actual conflict between state and federal law exists when "compliance with both federal and state regulations is a physical impossibility," or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Brown v. Hotel & Rest. Employees & Bartenders Int'l Union Local 54, 468 U.S. 491, 501 (1984) (citations omitted).

57.     Under the LMRA, it is unlawful for employers to provide payments to union representatives and entities, including union-established ERISA plans, beyond narrowly prescribed exceptions.  See 29 U.S.C. §§ 186(a) and (c).

58.     In particular, the LMRA prohibits and criminalizes payments to a union or union benefit plan unless "the detailed basis on which such payments are to be made is specified" in a collective bargaining agreement or other written agreement as provided under the Act.  29 U.S.C. § 186(a) and (c)(5).

59.     To comply with Section 2(f) of the PFML, the Signatory Contractors would have to provide payments to a union benefit plan on behalf of union employees who are not working.

60.     However, there is no written basis for such payments, because the Collective Bargaining Agreement requires the Signatory Contractors to provide "hourly sums" to the Plan based on the numbers of hours actually worked by union employees.

61.     Therefore, to comply with Section 2(f) of the PFML, employers would have to provide payments to the Plan without a written basis for doing so, in violation of the LMRA, and subject themselves to criminal penalties.  29 U.S.C. § 186(d).

62.     Alternatively, to comply with the LMRA, the Signatory Contractors must submit payments to the Plan in accordance with the Collective Bargaining Agreement, which provides for employer contributions on behalf of union employees based on the number of hours the employees actually worked.  Such conduct would be in violation of Section 2(f) of the PFML, which requires contributions to be made on behalf of employees who are on leave and not actually working, subjecting the Signatory Contractors to an enforcement action by the Department or civil liability under the PFML.  G. L. c. 175M, §§ 8(g) and 9(d).

63.     Therefore, it is physically impossible for the Signatory Contractors to comply with both Section 2(f) of the PFML and the LMRA.

64.     Accordingly, Section 2(f) of the PFML is preempted by the LMRA, 29 U.S.C. § 186(a) and (c), under the Supremacy Clause of the United States Constitution.

65.     In addition, Section 2(f) of the PFML interferes with the PCA's and its Signatory Contractors' rights to determine certain questions relating to the terms and conditions of employment through the collective bargaining process.

66.     The health insurance benefits provided by the Signatory Contractors to their employees are the subject of collective bargaining.

67.     To the extent that Section 2(f) of the PFML "attempts to introduce some standard of properly balanced bargaining power" or "defines . . . an ideal or balanced state of collective bargaining" by requiring a specified level of coverage or particular way of funding health insurance benefits, it is preempted because Congress intended to leave such balancing to labor

13

and management.  See Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Employment Relations Comm'n, 427 U.S. 132, 149-150 (1976).

68.     Accordingly, Section 2(f) is also preempted by the LMRA because it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Id. at 150-51.

WHEREFORE, the PCA asks that judgment enter in its favor against the Defendants, and respectfully requests that this Court:

A.  Issue a judgment consistent with Counts I and II declaring that:

   1)  Section 2(f) of the Massachusetts Paid Family and Medical Leave Law, G. L. c. 175M, § 2(f), is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq., because it impermissibly relates to an employee benefit plan governed by ERISA, imposes conflicting obligations on the Plan, and impermissibly provides alternative enforcement mechanisms for enforcing ERISA-plan benefits, and thus does not apply to the PCA or its Signatory Contractors;

   2)  Section 2(f) of the Massachusetts Paid Family and Medical Leave Law, G. L. c. 175M, § 2(f), is preempted under the Supremacy Clause of the United States Constitution because its requirements conflict with the requirements of the Labor Management Relations Act, 29 U.S.C. § 186(a) and (c)(5), making compliance with both laws physically impossible without the imposition of criminal penalties, an enforcement action, and/or civil liability, and because Section 2(f) would require the PCA and its Signatory Contractors to provide benefits to their unionized employees that were not bargained for between the

14

parties through the procedures established under their collective bargaining

agreement and federal law, and thus it does not apply to the PCA or its

Signatory Contractors; and

B.  Enjoin the Commonwealth and/or Department from enforcing or otherwise applying

Section 2(f) of the Massachusetts Paid Family and Medical Leave Law, G. L. c.

175M, § 2(f), against the PCA and its Signatory Contractors; and

C.  Issue such other relief as the Court may deem just and appropriate.

THE GREATER BOSTON PLUMBING
CONTRACTORS ASSOCIATION,

/s/ Johanna L. Matloff
_____
By its attorneys,
Johanna L. Matloff (BBO# 655178)
Conn Kavanaugh Rosenthal Peisch
    & Ford, LLP
One Federal Street, 15th Floor
Boston, MA 02110
(617) 482-8200
jmatloff@connkavanaugh.com

Dated:  December 23, 2020

2664275.1 03891.002

15