UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-12283-GAO

GREATER BOSTON PLUMBING CONTRATORS ASSOCIATION,
Plaintiff,

v.

WILLIAM ALPINE, in his official capacity as Director of the MASSACHUSETTS
DEPARTMENT OF FAMILY AND MEDICAL LEAVE,
Defendant.

OPINION AND ORDER
September 26, 2025

O'TOOLE, D.J.

The plaintiff, Greater Boston Plumbing Contractors Association ("PCA"), brings suit

pursuant to 28 U.S.C. §§ 2201 and 2202 against William Alpine in his official capacity as the

Director of the Massachusetts Department of Family and Medical Leave. Through this action, PCA

seeks a declaration that a section of the Commonwealth's paid family and medical leave law

involving health insurance benefits is preempted in part or in whole by federal law. The defendant

has moved to dismiss the complaint for lack of jurisdiction, contending generally that PCA lacks

standing under Article III to bring suit.

I.    **Background**[1]

PCA is a Massachusetts trade association that represents the interests of approximately

sixty unionized plumbing contractors and businesses ("Signatory Contractors") who have signed

onto a Collective Bargaining Agreement ("CBA"). Pursuant to the Signatory Contractors' CBA,

---

[1] The parties' submissions provide a detailed factual background. Only some key features are
highlighted here.

Signatory Contractors provide for, contribute to, or otherwise maintain their employees' health insurance benefits, which are governed by the terms and conditions of the Local 12 Health and Welfare Plan (the "Plan"). The Plan is an employee welfare benefit plan governed by ERISA. The Plan maintains a fund from which insurance premiums are paid for the purposes of providing health insurance coverage to the covered participants under the Plan (the "Fund"). The Fund receives contributions from the relevant employers, including specifically Signatory Contractors, in accordance with the terms of the CBA.

Under the CBA, employers provide for and contribute to an employee's health benefits based on the number of hours an employee has actually worked. The employers do not provide for or contribute to an employee's health benefits when the employee does not actually work. The Plan also provides an arrangement for employees to maintain health insurance when they are not working. If an employee works over a certain number of hours during a prescribed eligibility period, the employee may bank the surplus hours for future eligibility periods to maintain health insurance. If an employee is not working, his coverage may be maintained during future coverage periods through the hours banked during periods and, if there are insufficient hours in the bank, his coverage may not be maintained, and he instead must purchase COBRA or "self-pay" into the Plan the cost of maintaining health insurance.

In 2018, the Commonwealth enacted the Massachusetts Paid Family and Medical Leave Act ("PFML"). Under the PFML, Signatory Contractors are required to implement certain payroll deductions and remit certain employee and/or employer contributions to the Department of Family and Medical Leave (the "Department"), the state agency charged with enforcement of the PFML. Funds are held in a trust administered by the Department used to pay for benefits available under the PFML. Beginning on January 1, 2021, Massachusetts employees, including those who work

for Signatory Contractors, can apply for family and medical leave benefits. During that period, the

PFML requires employers to provide for and contribute to their employee's health insurance

benefits. Specifically, Section 2(f)—as amended on January 14, 2021—provides:

> During the duration of an employee's family or medical leave, the employer shall provide for, contribute to, or otherwise maintain the employee's employment-related health insurance benefits, if any, at the level and under the conditions coverage would have been provided if the employee had continued working continuously for the duration of such leave.[2]

(Second Am. Compl. for Declaratory J. and Inj. Relief ("Compl.") ¶ 14 (dkt. no. 8).)

On January 6, 2023, the Department issued a final regulation that codifies the Department's

interpretation of Section 2(f). 458 Mass. Code Regs. 2.16. The regulation describes a non-

exclusive list of how an employer can meet Section 2(f)'s "maintain" requirement. In relevant part,

it provides that using hours banks to maintain health insurance—the method already in use—

complies with Section 2(f). 458 Mass. Code Regs. 2.16(2)(c). Additionally, it also provides that

an employer can reimburse the employee for the equivalent of the non-employee portion of the

COBRA premium that is in excess of the non-employee's portion to satisfy Section 2(f)'s

requirement. 458 Mass. Code Regs. 2.16(2)(b).

---

[2] The language adopted in 2021 edited the previous provision, which provided that for the "duration of an employee's family or medical leave, the employer *shall provide for and contribute to* the employee's employment-related health insurance benefits, if any, at the level and under the conditions coverage would have been provided if the employee had continued working continuously for the duration of such leave." (Def.'s Mem. in Supp. of Mot. to Dismiss (dkt. no. 49) (emphasis in original).) Employers with multi-employer plans and labor groups apparently jointly proposed and advocated for the amendment that changed the conjunctive phrase to "provide for, contribute to, *or otherwise maintain*." (Emphasis added.) It was part of a two-step compromise whereby (1) the new statutory language would allow employers to comply by amending their plans rather than by providing cash contributions towards health insurance that would have been made had the employee continued working, and (2) labor groups would then amend their plans consistent with the revised law. However, no Plan or CBA amendments followed the legislative change. PCA claims that its efforts to amend the Plan to comply with Section 2(f) "were thwarted at the last minute by parties over whom PCA has no control." (Pl.'s Opp'n to Def.'s Mot. to Dismiss for Lack of Article III Subject Matter Jurisdiction 19 (dkt. no. 59).)

## II.    Discussion

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997). One aspect of the case-or-controversy requirement is standing. Standing requires that the party invoking jurisdiction had the requisite stake in the outcome of the suit when it was filed. To have standing, a plaintiff must demonstrate (1) an "injury in fact" which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) that "the injury is fairly traceable to the challenged action," and (3) that "it is likely . . . that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Env'l. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000); accord Penobscot Nation v. Frey, 3 F.4th 484, 508 (1st Cir. 2021). Associations such as PCA may have standing to sue in certain circumstances, including in relevant part when its individual members would otherwise have standing to sue in their own right. See Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977). An organization may not merely seek to vindicate its own abstract social interests or value preferences but rather must show that at least one of its members has suffered an injury in fact. See Sierra Club v. Morton, 405 U.S. 727, 739–40 (1972).

As to injury-in-fact, a plaintiff must show that he "has suffered some actual or threatened injury." Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, 454 U.S. 464, 472 (1982) (quotations omitted).) "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or [if] there is a 'substantial risk' that the harm will occur." Reddy v. Foster, 845 F.3d 493, 500 (1st Cir. 2017) (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) ("SBA List"); accord N.H. Lottery Comm'n v. Rosen, 986 F.3d 38, 50 (1st Cir.

2021). "Sometimes, the threat of enforcement alone 'may suffice as an 'imminent' Article III injury in fact." Penobscot Nation, 3 F.4th at 508 (quoting Reddy, 845 F.3d at 500). "When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." SBA List, 573 U.S. at 158 (citations omitted). Although a plaintiff must demonstrate a "specific threat of prosecution . . . , just how clear the threat of prosecution needs to be turns very much on the facts of the case and on a sliding-scale judgment that is very hard to calibrate." N.H. Hemp Council, Inc. v. Marshall, 203 F.3d 1, 4–5 (1st Cir. 2000).

In its second amended complaint, the plaintiff appears to focus on the "impending injury" PCA and its Signatory Contractors face "in the form of an enforcement action by [the Department], criminal and other penalties, and/or civil liability" based upon its perceived inability to comply simultaneously with both state and federal law. (Second Am. Compl. ¶ 40.) At the time this suit was filed, it expressed concern that Section 2(f) appeared to prohibit the drawing down of an employee's hours bank for the purpose of maintaining coverage of health insurance during a PFML leave. However, since that time, the Department has enacted regulations specifically authorizing the use of banked hours as a method of maintaining benefits during leave. And, in the years since this suit was originally filed in 2020, there is nothing in the record suggesting that the Department has commenced any enforcement action against any of the Signatory Contractors for failing to comply with the state law. Years of inaction do not substantiate a claim by the plaintiff that there is a substantial risk that the perceived harm will occur, nor that it is certainly impending.

The plaintiff expresses concern that, separate from the employee's use of banked hours, the potential that employers may have to reimburse a portion of a COBRA premium for an employee who runs out of banked hours puts the employers at imminent harm of an enforcement

action and requires them to act now to plan for that theoretical gap. However, the number of actions that must occur to put the employers in that possible position because of the purported tension between the two laws indicate that the potential injury is not imminent. As the defendant explains, first an employee must apply and be approved for a PFML leave. Second, the leave must not run concurrently with leave under the Family and Medical Leave Act, which has its own benefits-maintenance requirement. Third, the PFML leave must prevent the affected employee from working the amount needed to maintain eligibility in the next coverage period. Fourth, the employee must have exhausted all his hours in his hours bank that could be drawn upon as a backup to maintain insurance during the next coverage period. And finally, the employee would need to rely on COBRA and seek reimbursement for the employer's share of the COBRA premium.

While there *could be* an employee who meets all these conditions and has lost health insurance coverage from going on PFML leave and subsequently seeks reimbursement for an employer's share of a COBRA premium, PCA has not tendered any specific and concrete one. This lengthy and speculative chain of possibilities to lead to what is admittedly a rare situation is insufficient to satisfy the plaintiff's burden of showing actual or imminent harm. On the record currently before the Court, the plaintiff has not established a realistic danger of sustaining direct injury because of the statute's operation or enforcement

Because the threat of future injury in this case is too speculative for Article III's purposes, see Penobscot Nation, 3 F.4th at 508, PCA has not shown a cognizable injury as to standing.

6

7

**III.**    **Conclusion**

For the foregoing reasons, the Department's Motion to Dismiss for Lack of Article III

Subject-Matter Jurisdiction (dkt. no. 48) is therefore GRANTED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge